With that, we'll take the cases as they appear on calendar. And the first case is DIAZ v. ASHCROFT. May it please the Court? Your Honor, I'd like to reserve two minutes rebuttal time at the end. Okay. You'll watch your clock and I'll watch it too. Okay. Thank you. Good morning, Your Honors. My name is Susan Hill and I represent the petitioners in this case, Mr. and Mrs. David Aguero-Diaz. The Agueros are here before you today because they were denied the opportunity to present a crucial piece of evidence in their cancellation of removal claim before the immigration judge. The evidence was a psychological report that purported to assess the hardship that their three children would... You say they were denied, but as I understand it, you're challenging, under the abuse of discretion standard, the refusal by the BIA to reopen. And the question that I have for you is, as I understand it, there was a financial problem that your clients had in actually making arrangements to obtain the report. But the question, counsel, is, is that enough where the board found that they had access to the report? They knew that that evidence was there, but they simply couldn't afford to get it until a later stage of the proceeding. And why is that an abuse of discretion for the board to refuse to reopen when the evidence was available under those circumstances? Well, yes, Your Honor. This case does turn on the petitioners' particular circumstances. It falls around the, if I may back up a little bit, the history of the cancellation statute. It was promulgated in 1997, but there was no interpretation of that statute until, or at least the hardship portion of it, until three months before the petitioner's hearing. That decision came out in the form of matter of Monreal from the BIA. It was about three months. Did it occur to you, were you the attorney for the petitioner all the way through? No. My office represented them before the immigration judge. Did it occur to anyone to try to make a case of hardship before Monreal was published? Well, yes. At the time, no one really had any idea what the extent of the hardship was, the showing that was required. Based on experience with suspension cases and judge decisions up until that point in Monreal, that's all that any attorney had to go on. So consequently, people were preparing what they thought was sufficient evidence, and in the Aguero-Diaz's case, their children were of a bit of an older age, close to 13 years on down. So it wasn't clear as to how much preparation or how much evidence needed to go into any case. Of course, I guess an argument could be made that you could always do more, you could always do more, you could always do more, but in this case it did not have the benefit of any guidance from the BIA to explain what was sufficient. So therefore, three months before their hearing, the decision came out and it was made clear both through the majority opinion and the dissent that they needed to elevate their burden or their showing greatly. However, that required hiring a psychologist and getting the report, which they did not have sufficient funds for. So let me make sure I understand the argument here. Had they had the money at that point, they would have been able to obtain a timely report, but because of their financial circumstances, they just couldn't. Because of the shortened time for preparation, yes, Your Honor. They only had three months. Okay. So it really boils down to financial inability as opposed to not knowing that they needed it. They knew that they needed it, they just couldn't get the resources together to pay for it. Right. And while their case was pending for, I think it was about two years, for most of that two years they did not know and they could not have saved the money to get the report. For instance, if they had appeared in front of the judge for the very first time and she set the hearing for three months later, they could have told her that's not sufficient time for us to get this evidence. I don't think there would have been a problem with the judge, excuse me, at a master calendar hearing to grant some more time. They tried to get some additional time, did they not? Yes, they did. They asked the judge for some additional time. When was that request? It was at their final merits hearing, which was on August 6th, I believe. It was about three months and two days after the Montreal decision. And the judge denied the continuance because the case had been pending for two years? Is that what he said? From the record, the record's kind of scarce, but according to the declaration that the petitioners submitted with their brief on appeal to the BIA, and with the statements that were made both by the BIA and the IJ in their decisions, it basically boiled down to them saying that they had had sufficient time to prepare but did not address their specific argument that they only essentially had three months' notice of what the standard was. How do we get around the language? As I understand, petitions for reopen, they are essentially governed by the BIA regulations, and as I recall the language, it's pretty tough. So the question I have for you is how do we find an abuse of discretion where it appears that the board acted in conformity with the regulations? Go ahead. Yes, the board did rely on the regulation. However, the regulation does not specifically state what an alien needs to state in their motion to reopen in order to carry their burden. All it says is that the evidence needs to be previously unavailable and could not have been obtained or some such language like that. This is similar to some cases that this court has decided on, on different kinds of issues such as Padilla-Augustine with the notice of appeal form that did not sufficiently explain the standard that the BIA would employ in deciding whether or not to summarily dismiss an appeal for failure to sufficiently state the reasons for appeal on the notice of appeal. Also, Singh v. INS was a motion to reopen for exceptional circumstances where the alien had claimed that he had suffered an injury and it was denied stating that he failed to get an affidavit from a doctor and his employer where the statute did not specifically state he needed those affidavits. It just said you need to show exceptional circumstances. Also, Ordonez and Ramirez-Alejandre by this court have discussed how the BIA does not always adhere to its regulations and it's difficult for an alien to determine exactly what burden they need to carry when it's, I think Ordonez used the word, six-pronged approach to their evidentiary requirements at certain points. So, backing up to what actually did happen, in front of the judge, the Aguero-Diaz's did explain their reason and why they needed to have more time. In the motion to reopen, the statute does not specifically state that they need to restate their reasons. As far as they knew, they did this in case A. They had already stated these reasons before the judge in the hearing below and the judge did have the benefit of that record in front of her. Therefore, it can be said that this was part of the record and that they had stated the evidence. The judge's decision did not specifically come out and say that they had failed to state this evidence, their reason, in front of her. She just said, I find it's not sufficient. And then the BIA did review their reasons in its decision. So I would – it is argued that this evidence was properly before the board and that the regulations were complied with. There is no transcript of what the I.J. said, is there? Correct, Your Honor. That's why the only evidence that did come in was the declaration that the Petitioner submitted on their appeal after the judge made her decision. So the BIA wasn't reviewing the actual thought processes of the I.J. or the words expressing the – Correct. That's the standard procedure in front of the BIA. They only forward – they only – I'm sorry. When they forward a record to this court, they only forward the portion from the motion. Whose discretion are we looking at for abuse? The I.J. or the BIA? Well, at this point, I believe it would be the BIA because they did make a separate decision and they did refer to the parts of the record in their decision. But the BIA would – was the BIA in a position to expend time to go get a psychologist's report? They were in a position, Your Honor, to review whether or not the judge had made a proper decision. So in essence, they were reviewing the judge's abusive discretion. I think there's a – Well, let me just ask you one practical question.  Yes, Your Honor. If we were to grant you the relief and remand it, how old would the children be now? And would the petitioner still be able to demonstrate extreme hardship if the children are of the age of majority now? The children are only – I think Elvis was born in 88, so he would be 16 years old on down. So there's no age of majority. Thank you. Thank you. We'll give you a minute on rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Margo Nadel for the United States. The instant petition for review should be denied because the Board properly concluded that the petitioners failed to submit evidence, in this case, the psychological evaluation that was previously unavailable. In the two years that were pending before the – the case was pending before the Immigration Court, the petitioners chose not to file any psychological evaluations relating to their United States citizen children. Was that routine for petitioners to do that? To not – That is, to file psychological evaluations? Petitioners do file psychological evaluations. I know they do. Was it routine, though? I don't know whether it was. I don't know that – Well, you said – I mean, that seems – the argument is that until Montreal came down, petitioners, particularly people who are impecunious or have limited funds, weren't on notice that this would be the kind of evidence that would be required. Are you suggesting that Montreal didn't send a new signal? No, Your Honor, because the statute came out in 1996, and the statute was what changed the law. The statute raised the burden from, I think, unusual or from mere hardship or extreme hardship to an extreme and exceptionally unusual hardship. It was the statute that changed. The matter of Montreal was simply the judicial interpretation of the statute. And what kind of evidence would be useful to present? Evidence, for example, of a severe medical condition or something that would demonstrate unusual hardship above and beyond what aliens, children, or parents or qualifying United States citizen relative would face upon being deported. It's my understanding that after Montreal came down, petitioners did try to get time from the I.J. Right. To put that in, and we're told that it was denied. But they invited them or suggested that they could file a motion to reopen. Is that correct? The record reflects, as my opposing counsel pointed out, there is no transcript from the immigration court proceedings. But the petitioners did file a declaration indicating that the immigration judge made some indication that if they wished to file additional evidence, that they could file a motion to reopen. There was, however, no promise to grant that motion to reopen. It was simply a recognition of the fact that if they had additional evidence to present, they could do so by presenting a motion to reopen with their additional evidence. And would that be filed with the I.J.? Yeah, they can file the motion to reopen with the immigration judge. And how many days do they have to do that? They have 30 days from the date that their decision is issued. And I take it there's no evidence on this record that they made such a request within the 30-day period? No, they filed a timely motion to reopen with the immigration judge. Oh, I'm sorry. I thought the motion had been made to the board. No, the motion to reopen was originally filed with the immigration judge. After the immigration judge had said, if you want, I'm not going to give you time to get this information, but if you go get something, then you can file a motion to reopen with me. Well, Your Honor, they had three months from the time that the Monreal decision came out. I mean, did the I.J. determine that they didn't act with deliberateness? The I.J., it seemed, apparently relied on, had two years, as opposed to focusing on what the petitioners claimed before us is in any event, that when Monreal came down, they said, it looks like we may need or should present additional information, went to the I.J. And today the I.J. says, I'm not going to give you continuance, but if you get new evidence. The judge's decision is not. Pardon? I'm sorry. I'd just sort of like to finish, so I understand what the record is here, because it sort of affects at least my thinking about it, is that these aren't people who just ignored the procedures or anything. They found after Monreal, they made a judgment, the counsel, somebody made a judgment that they needed to beef up the record. They sought the opportunity from the I.J. to get time to do that. I.J. said, no, if you get new or additional evidence, whatever the terminology was, it's not in the record, but you can always move to reopen. They got the information. They came to reopen, and the judge says, sorry, this thing's been pending for two years, so too bad. Yes, sir. I think the relevant issue is whether the board, however, abused its discretion in denying the appeal of the motion to reopen. Well, but they based it on the fact that it wasn't additional evidence that couldn't have been discovered. Well, it wasn't. It sort of talks past what the factual circumstances were here. Well, Your Honor, the evidence wasn't previously unavailable, and, in fact, it only took. Well, how do we know it wasn't previously unavailable? We don't know what term, what time frame it was available to them. There's testimony or evidence here that they didn't have the money to get it, so it was financially unavailable in that sense. But it wasn't unavailable in the sense that they could not have presented it. How do we know that? In the sense that they chose not just to present it, but it wasn't unavailable in the sense that, for example, in this Court's decision in Malti versus INS where they or versus Ashcroft, rather, where the aliens presented new evidence that was previously unavailable in that country conditions had worsened, for example, that harassment had increased. I understand that this is a different case from that. But nonetheless, we're sort of looking past the realities of litigation. You say, well, the statute created the higher burden, and that as if Montreal has no impact on litigation posture of parties. That's the way the law gets evolved. We find out from experience as litigants what the quality of proof is, the nature of proof is. And you're saying that the BIA can just look past that and say, you know, too bad you had two years. You should have thought of this earlier, and our decision really had no impact. Well, I think another factor that's important to consider, Your Honor, is that the Petitioners never actually raised Montreal in their appeal to the Board. They never mentioned the Montreal case. They referred to Matter of Andazola, which came out in 2002. And in effect, what this Court should attempt to present is in each individual case, one can come out with, well, you know, there was an additional case that came out that's relevant to the case. I take your point on that. I'm just trying to stay focused on what these people did. There's nothing in the record that's been brought to my attention yet that indicates that these people were not diligent to the extent that they could be once they felt were advised that they needed to get additional information. They went to the IJ, said, can we get the continuance? The IJ says, no, but if you get additional information, you'll have the opportunity to present it. I grant that that's not a promise that they could. But it's troublesome to me, anyway, that they go out there and save up their money. They get this report, and then they're told, well, you know, you could have saved your time and money because Well, they were apparently able to Foreclosed from the get-go. They were apparently able to pull the report together in just three weeks from the immigration judge's decision. The immigration judge's decision was August 6, 2001. And knowing that they had a 30-day period to file the motion to reopen, they somehow were able to pull everything together in three weeks and come up with this additional psychological report. There's no credibility issue in this case, I take it.  No, no, Your Honor. Does the BIA agree that the Petitioner said that the immigration judge said we could do a motion to reopen? Yeah, we So that was said, anyway. Right. Whatever it means. That some form of that sentence was said, yes, that there was an indication that if they wished to file a motion to reopen, they could. But it's standard for the immigration judges, especially when pro se individuals are coming before the court to notify them, look, you know, if you're interested in filing additional information, you may do so. But that's no guarantee that their motion to reopen would be granted. In conclusion, Your Honor, I see I'm running out of time. The petition for review should be denied because the evidence was not previously unavailable in that they could have provided it earlier but chose not to. Thank you. Your Honors, I think what's at issue here in the case is that the Petitioners did act diligently and tried to get their case prepared. The fact that they managed to get an appointment with a psychologist, it was about a week after their last hearing, shows they had diligence. It's not the fact that they were unwilling to make the appointment. You have to take into consideration that they have to save up the money to pay the psychologist and get an appointment in the psychologist's schedule. They've always acted diligently. And in this essence, the judge and the BIA together have told these people that 30 days, that a delay of 30 days to get crucial evidence is just not going to be considered no matter what. Under these circumstances, I think it's grossly unfair. And additionally, the BIA was aware of the Montreal decision when they were making their decision, and it was referenced in the Petitioners' declaration before them. Therefore, they had considered it. Were you aware of the Montreal dissent? What time, Your Honor? The dissenting opinion in Montreal? Yes, Your Honor. It made a nice question. Which question was that? Well, whether there should have been an opportunity to get the other evidence in. Exactly. That's what really hammered the point home. Thank you. Okay. Thank you very much. We thank counsel for the arguments, and we will submit the case.
judges: Goodwin, Fisher, Tallman